IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

AARON ROBINSON )
)
BETTY CHILDRESS )                    Case No. 19-0934-CV-W-SRB
9220 East 85th Street )
Raytown MO 64138 )                   **Plaintiff Demands Trial by Jury**
)
DIANE BANKS )
5818 Kentucky Avenue )
Raytown MO 64133 )
)
YOLANDA MORRISON )
9550 East 57th Terrace )
Raytown MO 64433 )
)
FELICIA TYLER )
3507 Southern Hills Drive )
Kansas City MO 64137 )
)
          Plaintiffs )
)
    v. )
)
MIDWEST DIVISION-RMC,LLC, )
KRISTIE BAKER )
)
          Defendants )

## PLAINTIFFS' SECOND AMENDED COMPLAINT

COME NOW Plaintiffs, by and through counsel, and for their causes of action

against Defendants state and allege as follows:

## PARTIES

1.     Plaintiff Aaron Robinson is a resident of the State of Missouri, residing in

Jackson County, Missouri.

2.     Plaintiff Diane Banks is a resident of the State of Missouri, residing in

Jackson County, Missouri.

3.      Plaintiff Betty Childress is a resident of the State of Missouri, residing in Jackson County, Missouri.

4.      Plaintiff Yolanda Morrison is a resident of the State of Missouri, residing in Jackson County, Missouri.

5.      Plaintiff Felicia Tyler is a resident of the State of Missouri, residing in Jackson County, Missouri.

6.      Defendant Midwest Division - RMC LLC is a foreign entity conducting business in Missouri at 2323 East 63rd Street, Kansas City, Missouri, 64130. Defendant RMC is an employer within the meaning of the Missouri Human Rights Act, RSMo § 213.010 in that during the relevant time, Defendant employed six (6) or more persons.

7.      Defendant Kristie Baker is a resident of the State of Missouri. At all times relevant herein, Defendant Baker served as the VP of Operations for Defendant RMC and supervised and controlled the department in which Plaintiff Robinson worked.

## JURISDICTION & VENUE

8.      Plaintiffs file this Complaint under 42 U.S.C. § 1981 on behalf of themselves and all those similarly situated.

9.      Plaintiff Robinson files this Complaint pursuant to the Missouri Human Rights Act, § 213.010, RSMo. *et seq*. on behalf of himself and all those similarly situated

10.     Plaintiff Robinson timely filed his charge of discrimination within 180 days of the acts herein complained.   A true and correct copy of Plaintiff's charge of discrimination is attached hereto as Exhibit A and incorporated herein by reference.

11.     Plaintiff Robinson has filed suit within 90 days of receiving the Notice of Right to Sue. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit B and incorporated herein by reference.

12.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332.

13.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to § 1331 because Plaintiff brings a claim under federal law.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this district and the events related to this lawsuit occurred din this district.

## FACTS COMMON TO ALL COUNTS

15.     Plaintiffs are current and former employees of Defendant.

16.     Plaintiffs are African American.

17.     Plaintiffs have been subjected to an ongoing pattern and practice of racial discrimination and retaliation.

18.     Caucasian employees were favored, given better job assignments, better hours, and better treatment.

19.     Caucasian employees were often placed in the positions to which Plaintiffs applied.

**Plaintiff Aaron Robinson**

20.     Plaintiff Robinson worked for Defendant RMC from approximately 2011 until his termination on September 6, 2018.

21.    Plaintiff Robinson was an exceptional employee, receiving superlative feedback on performance appraisals.

22.    In April of 2018, Plaintiff Robinson was asked to move a bed in one of the senior's units.  Upon arrival, Plaintiff was halted and admonished that he was not allowed in that unit without announcing himself.  He was told some female patients felt unsafe with men around.

23.    Caucasian male employees, however, including Leroy Schuettenberg, Plaintiff Robinson Robinson's supervisor, entered the same unit without being required to announce themselves.

24.    Plaintiff Robinson reported to Human Resources that he felt he was being treated differently due to his race.

25.    Shortly after reporting the discrimination to Human Resources, Defendants drastically increased the number of work orders assigned to Plaintiff Robinson, in excess of what could realistically be completed by one person.

26.    Defendants not only assigned Plaintiff Robinson a higher volume of work than his Caucasian coworker, Defendants assigned Plaintiff Robinson the more difficult and unpleasant work orders.

27.    Shortly after increasing Plaintiff Robinson's work orders, Defendants wrote Plaintiff Robinson up for "poor performance" for not timely completing his work orders.

28.    To make matters worse, Mr. Schuettenberg began directing Plaintiff Robinson to complete some of his tasks, burdening Plaintiff Robinson with egregious amounts of work.

29.     Plaintiff Robinson felt he was being set up for failure in retaliation for making the aforementioned complaint of race discrimination, and again complained to Human Resources.

30.     Human Resources did nothing in response to Plaintiff Robinson's complaint.

31.     Defendants forced Plaintiff Robinson to be on call, despite his requests for time off.  His Caucasian colleague, Mr. Schuettenberg, was granted time off.

32.     Defendants subjected Plaintiff Robinson to disparaging, discriminatory comments.  Mr. Schuettenberg frequently referred to Mr. Robinson as "boy."

33.     On another occasion, on or about August 8, 2018, Defendant Baker, Mr. Schuettenberg, and Plaintiff Robinson were engaged in a conversation discussion painting non-skid paint in an area of the facility.  Mr. Schuettenberg suggested painting a swastika on the floor.  Defendant Baker casually laughed off the comment and did nothing to reprimand Mr. Schuettenberg.

34.     In the same conversation, Mr. Schuettenberg suggested segregating the patients at Research Psychiatric according to race.  Again, Defendant Baker did nothing to reprimand Mr. Schuettenberg.

35.     Defendant Baker casually made comments about other minority employees, questioning whether they were able to read English.

36.     Finally, on or about September 6, 2018, Defendant Baker terminated Plaintiff Robinson's employment.  The stated reason for his termination was a department restructuring.

**Plaintiff Diane Banks**

37.     Plaintiff Banks is an RN and MSN.

38.     Plaintiff Banks has worked for Defendant since March 17, 2017.

39.     Plaintiff Banks has applied for multiple positions, for which she is qualified, but has been repeatedly and consistently passed over for promotions and transfers, including the following positions:

      a.  Request to Transfer to Adult Unit

      b.  Nurse Educator

40.     Prior to her employment with Defendant, Plaintiff taught at various colleges and has a master's in nursing education.  Plaintiff was nonetheless passed over for the Educator position.  The position was awarded to a Caucasian female, Sara Steinmore, who had less teaching and clinical experience.

41.     Plaintiff offered to volunteer to help train the new hires, but Defendant did not allow her to do that.

42.     Plaintiff was called for an interview for House Supervisor, but when she arrived the ACNO that was to interview her was not available.  The recruiter had set up the appointment and Plaintiff took time off work to attend the interview.  She waited for at least an hour before she was told the ACNO was not available.

43.     Plaintiff served as a charge nurse on weekends but did not receive a bump in pay or a leader badge.  The role of charge nurse involves additional duties and responsibilities.

44.     Upon information and belief, other nurses serving as charge nurses were given additional pay for filling that role.

45.    Upon information and belief, only Caucasian individuals with associate's degrees are called upon to fill in on a PRN basis for managers, including Brook Stonge, Sharon Lauritzten, and Joel Craine.  African American employees, with more advanced nursing degrees, are not asked.

46.    Before Plaintiff Tyler left Defendant's employ in December 2018, she had groomed Plaintiff Banks for the Unit Manager position.  Other members of management were aware of this training.  After Plaintiff Tyler left, however, Plaintiff was not selected for the position.

**Plaintiff Betty Childress**

47.    Plaintiff Childress has worked for Defendant as a full-time employee from 2016 through present.

48.    Plaintiff works as a Registered Nurse on the Vine Unit.

49.    Plaintiff Childress received an "exceeds expectations" rating in June 2017.

50.    Plaintiff Childress received an "exceeds expectations" rating in June 2018.

51.    In August 2018, however, Plaintiff Childress was audited by the ACNO, Kia Walker, and subjected to verbal discipline by the interim nurse manager, Sheryl Noll.

52.    In October 2018 Plaintiff Childress was presented with a write-up by Amber Padella and Sheryl Noll that had to be destroyed because those issuing the write-up did not know how to look lab orders up on the system.

53.    These hasty write-ups started when Plaintiff Childress applied for promotions.

54.    In October 2018 Plaintiff Childress was written up for various infractions and placed on a 6-month probation, thereby preventing her from advancing. Plaintiff was the

acting charge nurse at the time, and Sheryl Noll blamed her for anything that went wrong in the Adult Unit. Plaintiff Childress was written up for not monitoring patients during lunch time, for which there is no policy requiring such monitoring and no other charge nurses were monitoring either.

55. Sheryl Noll documented that Plaintiff Childress would be getting a weekly performance evaluation but did not follow through. This was merely a pretense to deny Plaintiff promotions.

56. Plaintiff Childress was also the only charge nurse written up for not doing rounds with the mental health techs, a brand new policy which no charge nurse has been trained for, or had integrated into their schedule.

57. Plaintiff Childress was the charge nurse on the Adult Unit which is the busiest unit, thereby making Plaintiff the busiest charge nurse.

58. Defendant asked all charge nurses on the adult unit (all African-American) to begin taking patients. This resulted in the African-American charge nurses being more burdened, without any additional pay, than the Caucasian charge nurses who worked on different units.

59. Plaintiff's work was so heavily scrutinized that she stepped down from the Charge Nurse position.

60. Plaintiff Childress has applied for numerous positions, for which she is qualified, but has been repeatedly and consistently passed over for promotions and transfers, including the following positions. The positions were often filled by less-qualified and/or less-tenured Caucasian employees:

      a. Director of Trauma Unit, March 2015, filled by Brooke, Caucasian

b.  Manager of Mental Health Access Services, February 2016. Upon information and belief this position was filled by a Caucasian male.

c.  RN-ENDO/GI Lab, October 2016

d.  RN Psychiatric Adult Unit, Days, Weekend Option, December 2017

e.  House Supervisor, evenings, February 2018, filled by Lucinda, Caucasian

f.  Charge Nurse, Adult, Nights, March 2018, filled by Cody, Caucasian

g.  RN Case Manager, July 2018

h.  RN Psychiatric Adult PRN, October 2018, Plaintiff received this position which was a reduction in pay from her charge nurse position

i.  RN Psychiatric Adult VINE, November 2018, Plaintiff received this position which was a reduction in pay from her charge nurse position

j.  RN Psychiatric Adult Weekend Option, November 2018

k.  RN Case Manager, November 2018

l.  RN Psychiatric Adult Unit, December 2018, filled by Caucasian

m.  RN, January 2019

n.  Supervisor Behavior Health Patient Access

o.  House Supervisor, February 2019

p.  RN Psychiatric Adult VINE, February 2019, Plaintiff received this position

q.  RN Case Manager, February 2019

r.  Manager of Case Management, April 2019

s.  RN Case Manager, July 2019

t.  RN House Supervisor, July 2019, Caucasian PRN nurses were used for this position

u.  RN House Supervisor, August 2019, Caucasian PRN nurses were used for this position

v.  RN Weekend Option – Adult Unit, November 2019

w.  RN Manager Adult Behavioral Health, November 2019, filled by Amber Padella, Caucasian

61.  In January 2018 Plaintiff Childress stated in surveys conducted by Defendant that there was a lack of diversity and that minority nurses are not being considered for positions of leadership.

62.  In February 2018 Plaintiff Childress applied for a house supervisor position. The position was awarded to a Caucasian female.

63.  In January 2019 Plaintiff Childress applied and interviewed for the position of supervisor behavioral health patient access.  The position was awarded to a Caucasian male.

64.  Plaintiff Childress ultimately received the position of RN Psychiatric Adult VINE, February 2019.  She was told by Alex, nurse manager over the vine unit, "I'm going to hire you no matter what they say."  He was fired shortly thereafter.

65.  In March 2019 Plaintiff Childress inquired about a nursing supervisor position and weekend alternate position.  Plaintiff was told that there were no weekend alternative positions open.

66.  In or around July 2019 the male manager of the Adult Unit was transferred after complaints that he referred to African American nurses and patients as "monkeys."

A Caucasian nurse reported him for saying this, told everyone on the unit, but later recanted the statement when it was reported to Administration. The ACNO stated that the manager was moved because it is hard to work with the nurses on the adult unit. Most of the nurses in the adult unit are African American.

67.     In August 2019 Plaintiff Childress submitted a written complaint that African American nurses were being passed over for positions. Plaintiff received no response.

68.     Plaintiff Childress submitted a second complaint in August 2019 regarding treatment to which she was being subjected by Phil Bagley, the manager over the Adult Unit. He refused to do Plaintiff's evaluations, would not keep Plaintiff advised of changes, made threats that she and another African American employee would not work there much longer.

69.     When Phil Bagley's position became vacant, it was filled by Becky, a Caucasian.

70.     Plaintiff Childress applied for the position of RN Manager Adult Behavioral Health. A Caucasian nurse, Amber Padella, was appointed as the interim nurse manager.

71.     In December 2019 the manager of the adolescent unit, Shelly, Caucasian, took Plaintiff's cup and asked others to smell the cup to see if they smelled alcohol. A manager came to the unit and asked who the cup belonged to. Plaintiff complained to management that the accusation against her was offensive and untrue.

72.     In January 2020 Plaintiff Childress reported at a town hall meeting, in the presence of the CEO, ACNO, HR, and CEO of the main hospital, that there is a lack of diversity and that African American nurses are being passed over for promotions.

73.     In January 2020 the Adult Unit Manager, Amber Padella, selected a Caucasian nurse, Katie, from the adolescent unit, as her assistant instead of a selecting one of the many African American nurses that already worked in the unit for years.  Katie received a raise.  The Adult Unit Manager was confronted about the decision by an African American nurse.

74.     Plaintiff Childress observed that Caucasian nurses, Cody and others, were allowed to work the night shift in exchange for having attendance points removed from their record.  African American Nurses were not given this opportunity.

75.     Favoritism is shown in assigning staff to the adolescent unit as compared to other units.  The adolescent unit is viewed as a better assignment because the staff to patient ratios are watched closely.  The majority of nurses assigned to the adolescent unit are white.

**Plaintiff Yolanda Morrison**

76.     Plaintiff Morrison began working for Defendant in 2017.  She initially worked part-time and became a full-time employee in October 2018.

77.     Plaintiff works as a Registered Nurse.

78.     Plaintiff has been subjected to disciplinary actions for conduct or reasons which, upon information and belief, Caucasian employees were not disciplined for or received less harsh discipline. For example, Plaintiff's Caucasian manager, Amber Padella, approved vacation time for Plaintiff but then marked her as a no-call / no-show and refused to correct that information in Plaintiff's file.  Caucasian employees Joel Craine and Brook Saintonge told Plaintiff that they had often been late but never written up.

79.     Notwithstanding disciplinary actions, Plaintiff Morrison received "meets expectations" reviews in 2017 and 2018 and "exceeds expectations" in 2019.

80.     Plaintiff Morrison told Amber Padella that the minority children in the Adolescent Unit "needed to see nurses that look like them" because African American nurses were almost completely excluded from the Adolescent Unit.

81.     From approximately fall 2019 through present, a Caucasian nurse, Shelly, has consistently been given her choice of more desirable hours, day shift.

82.     Plaintiff Morrison applied for multiple positions, for which she is qualified, but has been repeatedly and consistently passed over for promotions and transfers.  For example, Dr. Katherine Brewer, Trauma Unit, asked Plaintiff to put in for a transfer to the Trauma Unit.  Plaintiff applied for the transfer but was blocked from the transfer due to Amber Padella having marked her as a no-call / no-show.

83.     The disciplinary actions and write-ups were Defendant's pattern and practice of preventing African American nurses from moving to more desirable positions or obtaining promotions.

84.     In 2018, Plaintiff Morrison desired to apply for the charge nurse position.  Plaintiff had been told that all available positions would be posted and that they would not be filling this charge nurse position.  The charge nurse position was not posted in 2018.  A Caucasian male PRN, however, was given the charge nurse position with an increase in pay.

85.     In or around October 2019, Shelly Shafer desired to create a 9 a.m. to 9 p.m. admissions nurse position in the Adolescent Unit.  Shelly stated that she wanted PRNs, Tobias Mentias, Joel Craine, and Plaintiff to do the work on different days.  The

position appealed to Plaintiff because the hours and work were more desirable. When Plaintiff arrived for her scheduled shift, she found that Tobias and Joel were handling the shift and her shift had been canceled. Plaintiff complained about this development and was told that it would all work out. No actions were taken, however, to remedy this discrimination. Joel and Tobias continued to be given preference over Plaintiff even though they were merely PRN and Plaintiff was a full time RN.

**Plaintiff Felicia Tyler**

86.     Plaintiff Tyler was employed by Defendant from July 2016 through December 2018.

87.     Plaintiff Tyler has a Master's Degree in Nursing with an emphasis in Administration.

88.     The last position held by Plaintiff was Nurse Manager.

89.     When Plaintiff was hired as Nurse Manager, she was responsible for 66 beds.

90.     In or around April 2017 a position was posted for a director position responsible for 22 beds. Plaintiff applied for this position. For the 22-bed unit, Defendant hired two Caucasian females, a director and a nurse manager. After that transition Plaintiff was still responsible for 44 beds on her own.

91.     As of mid-June 2017, the transition had still not taken place and Plaintiff was still managing 66 beds. She was told it would be 2-3 weeks more before the transition.

92.     Plaintiff Tyler applied for multiple positions, for which she is qualified, but has been repeatedly and consistently passed over for promotions and transfers.

93.     In September 2016 Plaintiff applied for an RN Director SAGE position.  A less qualified Caucasian RN, Cara Macaleer, was hired.

94.     Plaintiff later applied for and received the position of Nurse Manager Adult / Vine Unit.  This Unit was responsible for 66 beds while the Caucasian nurse managers were responsible for only 25 or fewer beds.

95.     Plaintiff's position of Nurse Manager had between 50-65 direct reports while other nurse managers had less than half that amount.

96.     Plaintiff was injured on the job.  Defendant refused to allow Plaintiff light duty.  A Caucasian RN, Cara Rufnak, however, was allowed to work on light duty for approximately one year.

97.     Plaintiff Tyler applied for a director position in Harrisonville.  A Caucasian woman, Kendra, was hired into the position.

98.     During her employment, Plaintiff complained about discrimination to the ACNO, Kia Walker.  Ms. Walker responded that she was not responsible for the decisions, that it was Kristi Baker, the VP of operations.

99.     Plaintiff notified Defendant, via Kia Walker, that she would require surgery. Two weeks later, in December 2018, Defendant terminated Plaintiff Tyler, stating they could not honor her leave of absence.

100.    Caucasian nurse, Cara Rufnak, however, was allowed to have shoulder surgery, leave of absence, and to return on light duty.

### COUNT I –RACE DISCRIMINATION - MISSOURI HUMAN RIGHTS ACT
### (PLAINTIFF AARON ROBINSON AGAINST MIDWEST DIVISION-RMC, LLC)

101.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

102. At all relevant times, Plaintiff could perform the essential functions of his job.

103. Plaintiff was subject to race discrimination as set forth in the foregoing paragraphs.

104. Plaintiff is an African American and subject to protection under RSMo § 213.055.

105. Defendant violated RSMo § 213.055 by committing an unlawful employment practice when Defendant discriminated against Plaintiff based on his race.

106. As a direct and proximate result of Defendant's discriminatory actions toward him, Plaintiff lost wages, salary and other benefits.

107. As a direct and proximate result of Defendant's discriminatory actions toward him, Plaintiff experienced pain and suffering, humiliation and embarrassment, harm to his reputation, and mental and emotional distress.

108. On information and belief, Defendant engages in a pattern and practice of discriminating on the basis of protected characteristics.

109. Defendant's acts were intentional, knowing, willful, and outrageous due to Defendant's evil motive or reckless indifference to the rights of others, and to the protection afforded under RSMo § 213.055, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for fair and reasonable actual damages, for punitive damages, for reasonable attorneys' fees, for his costs, and for such other relief as the Court deems just and proper under the circumstances.

**COUNT II – RETALIATION - MISSOURI HUMAN RIGHTS ACT**
**(PLAINTIFF AARON ROBINSON AGAINST MIDWEST DIVISION-RMC, LLC)**

110.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

111.    As is set forth in the foregoing paragraphs, Plaintiff was subjected to retaliation when he reported the racial discrimination and harassment to management.

112.    Defendant's actions as set forth above constitute an intentional pattern and practice of retaliation.

113.    At the time Defendant retaliated against Plaintiff, Defendant knew such retaliation was unlawful.

114.    As a direct and proximate result of Defendant's retaliatory actions toward him, Plaintiff lost wages, salary and other benefits, including all benefits to which he would have been entitled to.

115.    As a direct and proximate result of Defendant's retaliatory actions toward him, Plaintiff experienced pain and suffering, humiliation and embarrassment, harm to his reputation, and mental and emotional distress.

116.    Defendant's acts were intentional, knowing, willful, and outrageous due to Defendant's evil motive or reckless indifference to the rights of others, and to the protection afforded under RSMo § 213.055, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for fair and reasonable actual damages, for punitive damages, for reasonable attorneys' fees, for his costs, and for such other relief as the Court deems just and proper under the circumstances.

## COUNT III – DISCRIMINATION - 42 U.S.C. § 1981
## (ALL PLAINTIFFS)

117.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

118.    Plaintiffs are African-Americans, a racial minority, and are members of the class of people protected by 42 U.S.C. § 1981 of the Civil Rights Act of 1866.

119.    At all relevant times, Plaintiffs could and did perform the essential functions of their jobs.

120.    During their employment with Defendants, Plaintiffs had contractual employment relationships with Defendants, the terms of which included, but were not limited to, the right to be free from unlawful discrimination and harassment.

121.    Defendants' conduct, as alleged in the foregoing paragraphs, constitutes race discrimination and harassment in violation of 42 U.S.C. § 1981.

122.    Defendants' actions toward Plaintiffs were based on and because of Plaintiffs' race.

123.    Defendants knew or should have known of the discrimination and harassment against Plaintiffs, and those similarly situated to them, and failed to implement prompt and appropriate corrective action.

124.    Defendants maintained inadequate written policies, procedures, or guidelines with respect to discrimination and harassment on the basis of race.

125.    Defendants failed to investigate the incidents of discrimination and failed to take prompt remedial action.

126.    Defendants failed to properly train and/or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including 42 U.S.C. § 1981.

127.    Defendants' conduct constitutes intentional discrimination against Plaintiffs, with malice and/or reckless disregard of Plaintiffs' known rights.

128.    Defendants' conduct constitutes an intentional pattern and practice of discrimination based on and because of Plaintiffs' race.

129.    Plaintiffs were damaged by the above mentioned discrimination and harassment and are entitled to all remedies available to them as provided including but not limited to damages for loss of income, embarrassment, humiliation, emotional distress, damage to their reputation, diminution in earnings capacity, and other damages as yet undetermined, and Plaintiffs are reasonably expected to suffer from such damages in the future.

130.    Defendants' conduct was outrageous because of Defendants' evil motive or reckless indifference to the rights of Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount that is fair and reasonable and that will punish Defendants and deter Defendants and others from like conduct

WHEREFORE, Plaintiffs requests that the Court grant them judgment against Defendants in an amount that is fair and reasonable, for punitive damages, for their costs and attorneys' fees, and for such other relief as this Court deems just and proper.

## COUNT IV – RETALIATION - 42 U.S.C. § 1981
### (ALL PLAINTIFFS)

131.    Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

132.    Plaintiffs reported and objected to the racial discrimination, harassment, and retaliation perpetrated against them.

133.    Defendants took no remedial action in response to Plaintiffs' complaints.

134.    Defendants retaliated against Plaintiffs by failing and refusing to properly investigate their complaints, failing and refusing to take appropriate corrective action, and terminating them employment of some of the Plaintiffs.

135.    Defendants' conduct constitutes retaliation against Plaintiffs for their reports and complaints of discrimination and harassment, in violation of 42 U.S.C. § 1981.

136.    Defendants' retaliation toward Plaintiffs was because Plaintiffs reported and opposed Defendants' discriminatory and harassing actions against them.

137.    Defendants' conduct constitutes intentional retaliation against Plaintiffs, with malice, and/or reckless disregard of Plaintiffs' known rights.

138.    Defendants' actions as set forth above constitute an intentional pattern and practice of retaliation in violation of 42 U.S.C. § 1981.

139.    Plaintiffs were damaged by the above mentioned retaliation and is entitled to all remedies available to them, including but not limited to damages for loss of income, embarrassment, humiliation, emotional distress, damage to their reputation, diminution in earnings capacity, and other damages as yet undetermined, and Plaintiff is reasonably expected to suffer from such damages in the future.

140.    Defendants' conduct was outrageous because of Defendants' evil motive or reckless indifference to the rights of Plaintiffs, thereby entitling Plaintiffs to punitive damages in an amount that is fair and reasonable and that will punish Defendants and will deter Defendants and others from like conduct.

WHEREFORE, Plaintiffs requests that the Court grant them judgment against Defendants in an amount that is fair and reasonable, for punitive damages, for their costs and attorneys' fees, and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues in this case.

MONSEES & MAYER, P.C.

By: /s/ Amir Ardebili

    AMIR ARDEBILI
    4717 Grand Avenue, Suite 820
    Kansas City, MO 64112
    (816)361-5555   Fax: (816)361-5577
    aardebili@monseesmayer.com

WHITE, GRAHAM, BUCKLEY, & CARR L.L.C.

By: /s/ Gene P. Graham, Jr.

    GENE P. GRAHAM, JR.    34950
    DEBORAH J. BLAKELY    47138
    19049 E. Valley View Pkwy, Suite C
    Independence, Missouri 64055
    816-373-9080  Fax: 816-373-9319
    ggraham@wagblaw.com
    dblakely@wagblaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record via the court's electronic court filing system on this 31st  day of March 2020:

/s/ Gene P. Graham, Jr.
Counsel for Plaintiff

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| FEPA | |
| X EEOC | |

**Missouri Commission on Human Rights** and EEOC

*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)*<br>**Aaron Robinson** | HOME TELEPHONE *(Include Area Code)* | |
|---|---|---|
| STREET ADDRESS<br>**3918 E. 9th Street** | CITY, STATE AND ZIP CODE<br>**Kansas City, Missouri 64124** | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME<br>**Research Psychiatric Center** | NUMBER OF EMPLOYEES, MEMBERS<br>**Unknown** | TELEPHONE *(Include Area Code)*<br>**816-444-8161** | |
|---|---|---|---|
| STREET ADDRESS<br>**2323 E. 63rd Street** | CITY, STATE AND ZIP CODE<br>**Kansas City, Missouri 64130** | | COUNTY<br>**Jackson** |
| NAME<br>**Kristie Baker/Leroy Schuettenberg** | | TELEPHONE NUMBER *(Include Area Code)*<br>**816-444-8161** | |
| STREET ADDRESS<br>**2323 E. 63rd Street** | CITY, STATE AND ZIP CODE<br>**Kansas City, Missouri 64130** | | COUNTY<br>**Jackson** |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

| X | RACE | X | COLOR | | SEX | | RELIGION | | AGE |
|---|---|---|---|---|---|---|---|---|---|
| X | RETALIATION | | NATIONAL ORIGIN | | DISABILITY | | OTMY *(Specify)* | | |

DATE DISCRIMINATION TOOK PLACE
EARLIEST *(ADEA/EPA)* **April 2018**   LATEST *(ALL)* **September 2018**

X CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I was wrongfully terminated from my position at Research Psychiatric. I believe I was terminated due to racial discrimination and retaliation for making complaints of racial discrimination.

Sometime in April of 2018, I was called to move a bed in one of the senior's units. Upon my arrival, a Caucasian nurse stopped me and advised me that I was not allowed in that unit without first announcing myself because some female patients felt unsafe with men around. Caucasian male employees, however, including Leroy Schuettenberg, entered that same unit without any need to announce themselves. I felt I was being singled out due to my race, and reported this to the Human Resources Department. After voicing my concerns with Human Resources, the Vice President of Operations, Kristie Baker and Mr. Schuettenberg began assigning me work orders that were in excess of what could realistically be completed by any one employee in retaliation for my complaint to Human Resources.

Shortly after my complaint, in obvious retaliation for making my complaint to Human Resources, I was disciplined for "poor job performance." I was not timely completing my work orders. As I had been there for nearly seven years with a

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>1/14/19<br>Date     Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

EEOC FORM 5 (10/94)

**EXHIBIT**

**A**

perfect performance record, it was more than peculiar that I was now being coached. It was also peculiar how casual Ms. Baker was regarding the discipline. She advised me that it was not an official write-up, but rather just a warning.

The retaliation continued, as Mr. Schuettenberg also assigned some of his tasks to me, burdening me with my own work as well as Mr. Schuettenberg's. Furthermore, I was also assigned the more difficult and unpleasant tasks. I complained to Human Resources, stating that I believed Ms. Baker and Mr. Schuettenberg were intentionally setting me up for failure by giving me an impossible workload. Additionally, on several occasions, despite my requests for time off, Mr. Schuettenberg was granted the time off while I was forced to be on call.

On a number of occasions, I was present when discriminatory comments were made. One such comment was made on or about August 8, 2018, during a conversation between Ms. Baker and Mr. Schuettenberg where they were discussing painting a section of floor. During this conversation, Mr. Schuettenberg suggested painting a swastika on the floor. Ms. Baker casually laughed off the comment, doing nothing to admonish Mr. Schuettenberg, even after he persisted with the comments and further suggesting that they segregate the patients by race. Even though I, an African American, was present, Ms. Baker failed to discipline Mr. Schuettenberg. In this context, on numerous occasions Mr. Schuettenberg would disparagingly refer to me as "boy." Ms. Baker, who I relied on to prevent this type of discrimination, would make offhand comments about minority employees, questioning whether they were able to read English.

On September 6, 2018, I was terminated due to a department restructuring that eliminated my position. I was wrongfully terminated in violation of Missouri law in retaliation of my complaints of racial discrimination and retaliation.



MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
## MISSOURI COMMISSION ON HUMAN RIGHTS

| | | | |
|---|---|---|---|
| **MICHAEL L. PARSON**<br>GOVERNOR | **ANN S. HUI**<br>DEPARTMENT DIRECTOR | **MARTHA STAGGS**<br>COMMISSION CHAIR | **ALISA WARREN, PH.D.**<br>EXECUTIVE DIRECTOR |

July 15, 2019

Aaron Robinson
3918 E. 9th Street
Kansas City, MO 64124

RE: Robinson vs. Research Psychiatric Center et al
E-1/19-50510    28E-2019-00522

### NO RIGHT TO SUE on all Allegations against individual Respondent employees occurring after August 28, 2017 - BECAUSE OF LACK OF JURISDICTION

The MCHR has determined that it lacks jurisdiction over these allegations because statutory changes that became effective on August 28, 2017, excludes individual employees from the definition of "Employer" in the Missouri Human Rights Act. MCHR lacks jurisdiction over respondents that are not covered by the MHRA, therefore, MCHR is administratively closing this case with regard to these allegations as well and terminating all MCHR proceedings relating to these allegations.

### RIGHT TO SUE – on all other Allegations

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

This letter indicates your right to bring a civil action within 90 days of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST**.

(continued on next page)

| ☐ | ☐ | ☐ | ☒ | ☐ |
|---|---|---|---|---|
| 3315 W. TRUMAN BLVD.<br>P.O. BOX 1129<br>JEFFERSON CITY, MO 65102-1129<br>PHONE: 573-751-3325<br>FAX: 573-751-2905 | 111 N 7TH STREET, SUITE 903<br>ST. LOUIS, MO 63101-2100<br>PHONE: 314-340-7590<br>FAX: 314-340-7238 | P.O. BOX 1300<br>OZARK, MO 65721-1300<br>FAX: 417-485-6024 | 1410 GENESSEE, SUITE 260<br>KANSAS CITY, MO 64102<br>FAX: 816-889-3582 | 106 ARTHUR STREET<br>SUITE D<br>SIKESTON, MO 63801-5454<br>FAX: 573-472-5321 |

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)    Relay Missouri 711
www.labor.mo.gov/mohumanrights        E-Mail: mchr@labor.mo.gov

**EXHIBIT**
**B**

RE:   Robinson vs. Research Psychiatric Center et al
      E-1/19-50510   28E-2019-00522

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period for any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of this complaint and MCHR has not completed its administrative processing.

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri in state circuit court. Any such petition must be filed in the circuit court of Cole County.

Respectfully,

Alisa Warren, Ph.D.
Executive Director


Research Psychiatric Center
Kristie Baker; Leroy Schuettenberg
2323 E. 63rd Street
Kansas City, MO 64130


Becky Parrish
Research Psychiatric Center
2501 Park Plaza
Nashville, TN 37203


Jeff Rappuhn
Mark Edwards
2501 Park Plaza
Nashville, TN 37203


Amir Ardebili
Monsees & Mayer, PC
4717 Grand Ave., Suite 820
Kansas City, MO 64112

3315 W. TRUMAN BLVD.
P. O. BOX 1129
JEFFERSON CITY, MO 65102-1129
PHONE: 573-751-3325
FAX: 573-751-2905

111 N. 7TH STREET, SUITE 903
ST. LOUIS, MO 63101-2100
PHONE: 314-340-7590
FAX: 314-340-7238

P.O. BOX 1300
OZARK, MO 65721-1300
FAX: 417-485-6024

1410 GENESSEE, SUITE 260
KANSAS CITY, MO 64102
FAX: 816-889-3582

106 ARTHUR STREET
SUITE D
SIKESTON, MO 63801-5454
FAX: 573-472-5321

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities*
TDD/TTY:   1-800-735-2966 (TDD)   Relay Missouri: 711
www.labor.mo.gov/mohumanrights          E-Mail: mchr@labor.mo.gov